UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
CHRISTOPHER J. MELILLO AND                    Chapter 13
LISA M. MELILLO,                              Case No. 07-10238-WCH
       DEBTORS
_____

IN RE:
DENNIS J. FLYNN AND                           Chapter 13
ADELE HARATSIS FLYNN,                         Case No. 07-15470-WCH
       DEBTORS
_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matters before the Court are Christopher J. and Lisa M. Melillos' (the "Melillos") Motion for Reconsideration of Court's Order Dated February 12, 2008 (the "Motion for Reconsideration") and Dennis J. and Adele Haratsis Flynns' (the "Flynns") (collectively with the Melillos, the "Debtors") Motion for Clarification and Extension of Time to Comply with Court's Order Dated February 13, 2008 (the "Motion for Clarification"). In both cases, the Debtors seek reconsideration of the Court's orders denying of confirmation of their respective Chapter 13 plans for failure to comply with the provisions of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) based upon proposed balloon payments.[1] For the reasons set forth below, I will enter an orders denying reconsideration.

---

[1] The Motion for Clarification essentially requests reconsideration of the denial of confirmation on the basis that there was no apparent violation of 11 U.S.C. § 1325(a)(5)(B)(iii)(I). I will therefore treat this pleading as a motion for reconsideration.

## II. BACKGROUND

<u>The Melillos</u>

The Melillos filed their Chapter 13 petition on January 16, 2007. On June 27, 2007, they filed their First Amended Chapter 13 Plan (the "Melillos' Plan"). The Melillos' Plan provided for graduated payments as follows:

```
12 months @ $    500.00 = $   6,000.00
12 months @ $  1,000.00 = $  12,000.00
35 months @ $  1,500.00 = $  52,500.00
 1 month  @ $104,625.00 = $122,517.00
                          $193,017.00
```

The Melillos intended to fund the final balloon payment from either the sale or refinance of their principal residence or their Florida rental property. The Melillos' Plan proposed to cure $127,215.20 of arrears on five loans: an auto loan owed to United Auto Credit - Boston and four mortgages owed to Washington Mutual, Countrywide Home Loans, Old Centre Ventures, Inc., and the Sandy Bee Trust, respectively. Only the arrears on these secured claims would be paid through the plan, while the Melillos would maintain post-petition payments outside the plan.

On February 12, 2008, I entered an order denying confirmation of the Melillos' Plan on the basis that the proposed graduated payment scheme with a final balloon payment did not comply with the provisions of 11 U.S.C. § 1325(a)(5)(B)(iii)(I). On February 20, 2008, the Melillos filed the Motion for Reconsideration asserting that 11 U.S.C. § 1325(a)(5)(B)(iii)(I) can be read as effecting only one secured creditor, and as no objections have been filed, that creditor has assented to this treatment.[2] On February 28, 2008, I took the matter under advisement.

---

[2] The Motion for Reconsideration does not indicate who the Melillos believe is the only secured creditor effected by 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

2

The Flynns

The Flynns filed their Chapter 13 petition on August 30, 2007. On December 17, 2007, the Flynns filed their First Amended Chapter 13 Plan (the "Flynns' Plan"). The Flynns' Plan provides for fifty-nine payments of $550.00 per month and one payment of $37,716.00. The Flynns' Plan contemplates that the lump sum payment will be funded by the Flynns borrowing against their retirement accounts. In their plan, the Flynns propose to pay $34,376.91 to Deutsche Bank National Trust Co. for pre-petition arrears and fees associated with their first mortgage, as well as $4,296.70 to the Town of Holliston for real estate taxes and water and sewer fees.

On February 13, 2008, I denied confirmation of the Flynns' Plan as the final month balloon payment violated the provisions of 11 U.S.C. § 1325(a)(5)(B)(iii)(I). On February 20, 2008, the Flynns filed the Motion for Clarification seeking clarification of my February 13, 2008 order on the basis that no debt secured by personal or real property was effected by the Flynns' Plan beyond the curing of arrears on a long-term debt. As the Motion for Clarification raised similar issues as the Melillos' Motion for Reconsideration, I took it under advisement on February 28, 2008.

### III. POSITIONS OF THE PARTIES

In both cases, the Debtors raise essentially the same arguments in support of their respective plans.[3] In the Motion for Clarification, the Flynns cite *In re Davis*[4] for the proposition that equal monthly payments are not required when the claim at issue is one in which arrears on a long term debt are being cured pursuant to 11 U.S.C. § 1322(b)(5). Though not expressly stated by the Motion for Reconsideration, the Melillos also appear to rely on *Davis*, as they suggest I read the provisions

---

[3] I note that Attorney Laurel E. Bretta is the counsel of record for both the Melillos and the Flynns.

[4] *In re Davis*, 343 B.R. 326, 328 (Bankr. M.D. Fla. 2006).

3

of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) as effecting only one creditor, presumably the one creditor whose loan will mature during the term of the plan. Additionally, the Debtors assert that no creditors have filed objections to their respective plans based upon 11 U.S.C. § 1325(a)(5)(B)(iii)(I), and therefore their silence can be deemed consent to such treatment.

## IV. <u>ANALYSIS</u>

Section 1325(a) of the Bankruptcy Code sets forth the conditions under which a court shall confirm a debtor's chapter 13 plan. The conditions setting forth the treatment of secured claims are described in 11 U.S.C. § 1325(a)(5). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") significantly amended the provisions of this subsection by adding requirement that "if . . . property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]"[5] This amendment was aimed at perceived abuses under the prior law. One court summarized them as such:

> Prior to BAPCPA, it was not uncommon for some Chapter 13 plans to provide for backloaded payments, such as balloon payments. Another form of backloading involved graduated or step-up payment plans, where the payments started out smaller and increased over time. Secured creditors, particularly those secured by a vehicle, viewed this as unfair, exposing them to undue risk in light of the constant depreciation of their collateral.
>
> Other plans, filed by debtors whose employment is seasonal, provided for reduced payments or no payments at all during certain months of the year, or called for payments to be made quarterly or semi-annually, rather than monthly, based upon the peculiarities of the debtor's income stream. Secured creditors had similar complaints with those plans.[6]

Not unlike other amendments made by BAPCPA, this seemingly straightforward provision has generated considerable splits among the relatively few bankruptcy courts that have addressed its

---

[5] 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

[6] *In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007).

4

practical application.[7] I, however, need not fully define the parameters of "equal monthly payments" at this time because the Debtors' plans fail under any definition.

While avoiding a tortuous parsing of the statute, a few conclusions are apparent. First, I understand 11 U.S.C. § 1325(a)(5)(B)(iii)(I) to require that a plan providing for periodic payments to a secured creditor have payments in an equal amounts from the time they begin until the time they cease. Second, it is logical and consistent with other provisions of the Bankruptcy Code to conclude that payments to a secured creditor need only continue until the claim is satisfied and not for the full life of the plan. Although *Collier on Bankruptcy* suggests that a single lump sum payment is not precluded by 11 U.S.C. § 1325(a)(5)(B)(iii)(I),[8] it seems apparent that once periodic payments to that creditor commence, a subsequent balloon payment would be unequal to those that preceded it. The

---

[7] *See, e.g., In re Wallace*, Nos. 07-10729, 2007 WL 3531551 (Bankr. M.D.N.C. Nov. 12, 2007) (a plan that provides for a balloon payment to a secured creditor is not confirmable); *In re Luckett*, No. 07-24706-SVK, 2007 WL 3125278 (Bankr. E.D. Wis. Oct. 24, 2007) (adequate protection payments are property distributed to a secured creditor and must be in equal monthly amounts); *Erwin*, 376 B.R. 897 (equal payment provision serves a restriction on how debtors may propose payments and is not a directive the Chapter 13 trustee on how to make the payments); *In re Denton*, 370 B.R. 441 (Bankr. S.D. Ga. 2007) (secured creditors must begin receiving payments in equal monthly amounts beginning with the first payment after confirmation); *In re Newberry*, No. 07-10170, 2007 WL 2029312 (Bankr. D. Vt. July 10, 2007) (a combination of monthly payments and a balloon payment categorically violates the directive for equal monthly payments); *In re Schultz*, 363 B.R. 902, 906 (Bankr. E.D. Wis. 2007) (holding that "periodic payments must be equal, period."); *In re Blevins*, No. 06-10978 A 13, 2006 WL 2724153 (Bankr. E.D. Cal. 2006); *In re Lemieux*, 347 B.R. 460 (Bankr. D. Mass. 2006) (debtor curing a default on a debt which matures during the term of the plan must do so in equal monthly payments); *Davis*, 343 B.R. 326 (holding 11 U.S.C. § 1325(a)(5(B)(iii)(I) is inapplicable when curing arrears on a long term debt); *In re Wagner*, 342 B.R. 766 (Bankr. E.D. Tenn. 2006) (debtor paying long term maintenance payments pursuant to 11 U.S.C. § 1322(b)(5) is still subject to the equal monthly payment requirement); *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006) (property distributed to secured creditors under Chapter 13 plan must be in equal monthly amounts once they commence, but there is no requirement that such payments begin on the effective date of the plan).

[8] *Collier on Bankruptcy* ¶ 1325.06[3][b][ii][A] at 1325-37 (15th ed. rev. 2007).

5

majority of bankruptcy courts that have addressed this issue have reached the same conclusion.[9]

The *Davis* court, however, did not reach the same conclusion when addressing whether plan payments solely to cure a default on a long term debt under 11 U.S.C. § 1322(b)(5)[10] were subject to the "equal monthly payments" requirement.[11] In *Davis*, the court analyzed the interplay between 11 U.S.C. §§ 1322(b)(5) and 1325(a)(5) by examining the historical interaction of 11 U.S.C. §§ 1322(b) and 1325(a)(5).[12] It observed that the enactment of 11 U.S.C. § 1322(e) technically overruled the Supreme Court of the United States's decision in *Rake v. Wade*,[13] which held that oversecured creditors whose claims were modified by 11 U.S.C. § 1322(b) were entitled to pre- and post-confirmation interest on arrears paid through the plan even when the underlying contract and state law did not so provide.[14] The *Davis* court concluded that 11 U.S.C. § 1322(e) has the effect of overriding 11 U.S.C. § 1325(a)(5) when arrears on a long term debt are cured under 11 U.S.C. §

---

[9] *Wallace*, 2007 WL 3531551 *1; *Luckett*, 2007 WL 3125278 *2; *Newberry*, 2007 WL 2029312 *3; *Schultz*, 363 B.R. at 906; *Lemieux*, 347 B.R. at 464; *Wagner*, 342 B.R. at 772.

[10] Section 1325(b) provides in relevant part:
(b) Subject to subsections (a) and (c) of this section, the plan may--

\* \* \*

> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . .

[11] *Davis*, 343 B.R. at 327.

[12] *Id.* at 328.

[13] *Rake v. Wade*, 508 U.S. 464 (1993).

[14] *Davis*, 343 B.R. at 328.

1322(b)(5), and therefore, that the equal monthly payment provision of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) is inapplicable to the payment of arrears on a long term debt.[15] I disagree.

Section 1322(e) states that:

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, *the amount necessary to cure the default*, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.[16]

While 11 U.S.C. § 1322(e) supercedes 11 U.S.C. § 1325(a)(5)(B)(ii) with respect to the amount necessary to cure the default, there is nothing in that provision to suggest that it renders 11 U.S.C. § 1325(a)(5) completely inapplicable when arrears on a long term debt are cured through the plan. Section 1322(e) refers only to the "amount necessary to cure the default," and not the manner in which it is cured.[17] Section 1325(a)(5)(B)(iii)(I), however, provides that if property is to be distributed to the holder of an allowed secured claim in periodic payments, the payments must be in equal monthly amounts.[18] It does not speak to the total "amount necessary to cure the default." As 11 U.S.C. § 1325(a)(5)(B)(iii)(I) was enacted in 2005, eleven years after 11 U.S.C. § 1322(e), Congress could easily have drafted the clause to be expressly inapplicable in curing arrears on a long term debt if it had so intended. Moreover, *Davis* cites no authority to support such a blanket override.[19] I also note that no other court has extended *Davis*' reasoning while four others have

---

[15] *Id.*

[16] 11 U.S.C. § 1322(e) (emphasis added).

[17] *See Id.*

[18] *See* 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

[19] *Davis*, 343 B.R. at 328.

either rejected or distinguished it.[20]

Reliance on 11 U.S.C. § 1322(b)(5) is also misplaced for similar reasons. Section 1322(b)(5) is a discretionary provision with respect to the contents of a plan and merely states that a plan *may* provide for the curing of any default within a reasonable time and the maintenance of payments for a debt for which the last payment is due after the term of the plan. In contrast, 11 U.S.C. § 1325(a) is a mandatory provision with respect to confirmation and uses the phrase "*shall* confirm," indicating that plans will only be confirmed if they comport to the requirements laid out in that section. Section 1325(a)(5)(B)(iii)(I) does not preclude the curing of a default within a reasonable time or the maintenance of payments on a long term debt as it only controls the manner in which payments are made. Ultimately, "[s]ection 1322(b)(5) just means that the entire secured claim need not be paid in full under certain circumstances allowing cure of default, but the claim is still an allowed secured claim."[21]

In the present cases, the Debtors' proposed backloaded balloon payments are clearly unequal to the periodic payments that would precede them.[22] It is irrelevant that the Debtors seek only to cure

---

[20] *See Wallace*, 2007 WL 3531551; *Schultz*, 363 B.R. 902; *Blevins*, 2006 WL 2724153; *Lemieux*, 347 B.R. 460.

[21] *Schultz*, 363 B.R. at 906.

[22] I note that 11 U.S.C. § 1325(a)(5)(B)(iii)(I) applies to payments made to secured creditors and not plan payments. The Summary of Disbursements to be Made Under the Plan (the "Summary") attached to the Chapter 13 trustee's Proposed Confirmation Order for the Melillos' Plan indicate total monthly disbursements to their secured creditors in an amount which greatly exceeds the Melillos' plan payment. The Summary attached to the Chapter 13 trustee's Proposed Confirmation Order for the Flynns' Plan does not indicate a monthly disbursement, but merely states the total amounts will be paid over the sixty-month term. As was the case with the Melillos' Plan, dividing the total secured claims by sixty yields a disbursement which exceeds the Flynns' plan payment. Additionally, the balloon payment in each case exceeds the amount of secured claims to be paid under their respective plans. As such, it is clear that it is mathematically impossible for the payments to the secured creditors to be in equal monthly

8

their arrears through their respective plans, as the payments remain periodic payments made to secured creditors. The Bankruptcy Code simply does not provide an exception for this type of claim to be treated in this manner. As such, both plans violate the provisions of 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

In the alternative, the Debtors' assert that I may construe their secured creditors' lack of objection as consent, and therefore find the proposed treatments confirmable under 11 U.S.C. § 1325(a)(5)(A).[23] As I recently stated in *In re Bethoney*, "even in the absence of objection by a creditor, the court has an affirmative duty to review [a Chapter 13 plan] and ensure its provisions comply with the provisions of the Bankruptcy Code."[24] I held that I cannot infer a secured creditor's consent to treatment which is expressly prohibited by the Bankruptcy Code from a lack of an objection because "it has a reasonable expectation that I will not approve treatment which violates the Bankruptcy Code."[25] Here, graduated payments and backloaded balloon payments in plans are exactly the proposed treatment Congress sought to prohibit. Accordingly, I cannot confirm either the Melillos' Plan or the Flynns' Plan.[26]

---

amounts with balloon payments of this magnitude.

[23] Section 1325(a)(5)(A) provides that "the court shall confirm a plan if . . . with respect to each allowed secured claim provided for by the plan . . . the holder of such claim has accepted the plan . . . ."

[24] *In re Bethoney*, No. 07-13609-WCH, 2008 WL 179509 *6 (Bankr. D. Mass. Jan. 17, 2008).

[25] *Id.*

[26] The issue of whether a creditor can affirmatively consent to treatment that is prohibited by the express provisions of the of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) is beyond the scope of this opinion.

## V. CONCLUSION

In light of the foregoing, I will enter orders denying the Motion for Reconsideration and granting in part the Motion for Clarification,[27] and order the Debtors to file amended Chapter 13 plans within two weeks.

*[signature: William C. Hillman]*

_____
William Hillman
United States Bankruptcy Judge

Dated: April 8, 2008

---

[27] The Motion for Clarification will be granted in part to the extent that this memorandum provides clarification of my prior order.